# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PEGASUS WIRELESS INNOVATION LLC, <br>     *Plaintiff,* <br> v. <br> CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, et al., <br>     *Defendants*, <br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br>     *Intervenors.* | CASE NO. 2:23-cv-00640-JRG <br> (Lead Case) |
| PEGASUS WIRELESS INNOVATION LLC, <br>     *Plaintiff,* <br> v. <br> AT&T CORP, et al., <br>     *Defendants*, <br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br>     *Intervenors.* | CASE NO. 2:23-cv-00638-JRG <br> (Member Case) |
| PEGASUS WIRELESS INNOVATION LLC, <br>     *Plaintiff,* <br> v. <br> T-MOBILE USA, INC., et al., <br>     *Defendants*, <br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br>     *Intervenors.* | CASE NO. 2:23-cv-00639-JRG <br> (Member Case) |

## MEMORANDUM OPINION AND ORDER

Before the Court are (1) KT Corporation's ("KT") Motion for Protective Order from Questioning Beyond the Scope of Jurisdictional Discovery (the "PO Motion," Dkt. No. 168), and (2) Defendants[1] and Intervenors'[2] Motion to Compel Court Ordered Deposition of KT Corporation (the "MTC," Dkt. No. 169, and with the PO Motion, the "Motions"). In the PO Motion, KT requests "a protective order seeking relief from non-jurisdictional discovery under FED. R. CIV. P. 26(c)(1), Local Rule CV-26(d), and this Court's Jurisdictional Discovery Order (Dkt. 148)." (Dkt. No. 168 at 1.) In the MTC, Defendants and Intervenors request that the Court compel KT to "provide a witness for a 30(b)(6) deposition related to the Court's personal jurisdiction over KT." (Dkt. No. 169 at 1.) For the following reasons, the Court finds that (1) the PO Motion should be **GRANTED**, and (2) that the MTC should be **DENIED**.

## I.   INTRODUCTION

On December 29, 2023, Plaintiff Pegasus Wireless Innovation LLC ("Plaintiff") filed three patent infringement complaints against AT&T, T-Mobile, and Verizon. (Dkt. No. 1; No. 2:23-cv-00638-JRG, Dkt. No. 1; No. 2:23-cv-00639-JRG, Dkt. No. 1.) In each complaint, Plaintiff asserts that Defendants infringe U.S. Patent Nos. 11,627,631; 10,181,931; 10,616,932; 11,405,942; 10,594,460; 10,721,118; 11,219,000; 10,638,463; 11,540,272; 9,894,644; and 10,009,161 (collectively, the "Asserted Patents"). (Dkt. No. 1 ¶ 1; No. 2:23-cv-00638-JRG, Dkt. No. 1 ¶ 1; No. 2:23-cv-00639-JRG, Dkt. No. 1 ¶ 1.) Given this overlap, the Court consolidated the three cases for all pretrial issues. (Dkt. No. 16.)

---

[1] Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., and TracFone Wireless, Inc (collectively, "Verizon"), AT&T Corp., AT&T Services, Inc., AT&T Mobility LLC, AT&T Mobility II LLC, New Cingular Wireless PCS, LLC, and Cricket Wireless LLC (collectively, "AT&T"), and T-Mobile USA, Inc., Sprint Solutions LLC, and Sprint Spectrum LLC (collectively, "T-Mobile" and with Verizon and AT&T, the "Defendants").

[2] Ericsson Inc. ("Ericsson") and Nokia of America Corp. ("Nokia" and with Ericsson, the "Intervenors").

On March 25, 2024, AT&T, T-Mobile, and Verizon each filed an Answer and Counterclaims to their respective Complaints. (Dkt. Nos. 36, 39, 42.) Intervenors Nokia and Ericsson also each filed an answer and claims against KT. (Dkt. Nos. 99–101, 115–117.) Relevant here, Defendants and Intervenors identically pled claims 12 and 13, respectively for "Breach of Contract (FRAND)" and "Failure to Negotiate in Good Faith." (*See, e.g.*, Dkt. No. 36 Counterclaims ¶¶ 117–128.) These claims are asserted against both Plaintiff and Third-Party Defendant KT.

KT moved to dismiss all claims, arguing that (1) this Court does not have personal jurisdiction over KT, and (2) Defendants and Intervenors fail to state a claim under Rule 12(b)(6). (Dkt. Nos. 130–134.) KT, Defendants, and Intervenors then jointly moved to (1) extend the deadline for Defendants/Intervenors to respond to the motions to dismiss, and (2) conduct jurisdictional discovery. (Dkt. No. 146.) Relevant here, the joint motion included the following agreement between KT, Defendants, and Intervenors:

> The parties have 60 days to conduct jurisdictional discovery. Discovery shall be limited to issues raised in KT's motion to dismiss for lack of personal jurisdiction and shall not include issues related to only the FRAND counterclaims.

(*Id*. at 3.) The Court granted the joint motion and entered an Order reflecting this agreement between KT, Defendants, and Intervenors. (Dkt. No. 148 at 3.)

The Court recently resolved a separate dispute regarding the scope of jurisdictional discovery. On December 12, 2024, the Court granted KT's motion for a protective order from non-jurisdictional discovery and denied Defendants'/Intervenors' motion to compel non-jurisdictional discovery requests. (Dkt. No. 178.) Specifically, the Court held that "Defendants/Intervenors are not entitled to non-jurisdictional discovery during the jurisdictional discovery period" in view of the Parties' agreement and the Court Order on jurisdictional discovery. (*Id*. at 4.) The Court further

ordered the Parties to meet and confer to determine whether the Court's guidance resolved the issues raised in the Motions now before the Court. (*Id*. at 6.)

On December 19, 2024, the Parties filed a Joint Notice. (Dkt. No. 181.) In the Joint Notice, Defendants/Intervenors state that the Court's guidance resolves the issues in the Motions now before the Court. (*Id*. at 3.) According to Defendants/Intervenors, (1) the Parties agree that discovery with "dual relevance" to both jurisdictional and non-jurisdictional discovery is fair game, and (2) "Defendants and Intervenors made clear they will not seek discovery that is not relevant to jurisdiction." (*Id*.) However, KT requests that the Court rule on the Motions now before it because "Defendants/Intervenors are seeking to the [sic] use the jurisdictional discovery process to obtain damages-related discovery which has little (if any) relevance to personal jurisdiction." (*Id*. at 4.)

## II.   ANALYSIS

Defendants/Intervenors are not entitled to non-jurisdictional discovery. (Dkt. No. 178.) The Parties seem to agree that Defendants/Intervenors are entitled to "dual relevance" discovery. (Dkt. No. 181 at 3.) However, in the Motions, the Parties seem to dispute what separates jurisdictional discovery from non-jurisdictional discovery, forcing the Court to resolve the Parties' dispute and provide additional guidance.

### A.   The PO Motion (Dkt. No. 168)

Under Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1).

KT argues that Defendants/Intervenors served a 30(b)(6) deposition notice that includes topics that exceed the scope of jurisdictional discovery. For example, Topic No. 1 concerns the following:

4

> The negotiation, execution, performance, and details of all licenses, sales, assignments, transfers, enforcement agreements, or agreements that grant rights of any kind (such as covenants-not-to-sue, forebearances, defensive terminations, standstills, or agency rights), that are related to any of the Patents-in-Suit, the KT Patents, Related Patents, and/or any patent that KT claims to have any rights, title, or interest in, and that involve entities located in the United States or that have significant activities or product sales in the United States that would be granted any of the above rights, including but not limited to Samsung Electronics Co., Ltd., Apple Inc., Avanci, LLC, or Sisvel International S.A.

(Dkt. No. 168 at 2.) KT objected to this topic and others to the extent they seek information irrelevant to jurisdictional discovery. (*Id*.) KT argues that Defendants/Intervenors still seek information that exceeds the scope of jurisdictional discovery, such as the "details of *all* licenses," including "the number of patents, the dollar amounts, and specific terms of the agreements." (*Id*. at 4–5.) According to KT, such details are not relevant to jurisdictional discovery. (*Id*. at 5–6.) Further, KT argues that discovery related to (1) details of meetings held in Korea when licenses were negotiated, and (2) patent "essentiality evaluations," are irrelevant to jurisdictional issues. (*Id*. at 6–7.)

In response, Defendants/Intervenors argue that "(1) details of licenses to the Asserted Patents, (2) details of meetings in which those licenses were negotiated, and (3) patent submissions to, and 'essentiality evaluations' from, patent pools, including one in Dallas, Texas . . . *also* relate to personal jurisdiction." (Dkt. No. 170 at 3.) First, regarding licenses, Defendants/Intervenors argue that "[i]f a license is directed to a forum, then the 'number of patents' and 'the dollar amounts' in the license will go to 'the nature and extent' of contact with the forum" in a personal jurisdiction analysis. (*Id*. at 4.) Second, regarding the details of meetings, Defendants/Intervenors argue that such details are relevant if, for example, KT was "discussing filing of a lawsuit in the Eastern District of Texas" or to probe whether KT controls Plaintiff. (*Id*. at 5.) Finally, Defendants/Intervenors argue that the patent "essentiality evaluations" are relevant because KT

5

purportedly received essentiality evaluations from United States entities, including one located in Dallas, Texas. (*Id*. at 6.)

  The Court finds that the PO Motion should be granted. Regarding licensing details, the Court disagrees with Defendants/Intervenors that the number of patents and the value of a license are relevant to the personal jurisdiction "minimum contacts" analysis. Additionally, while the Court appreciates that the scope of a license may be relevant to a personal jurisdiction analysis,[3] the licenses at issue presumably define this scope within their own terms. The existence and facial terms of an agreement may be relevant to personal jurisdiction, but not the interpretation of such agreements.[4] Regarding the details of meetings held in Korea, the Court finds that KT agreed that its corporate representative may be questioned about such meetings. (Dkt. No. 170-2 at 1.) In view of this agreement, the Court finds that Defendants/Intervenors may question the witness about these meetings. However, the questions may not exceed the scope of jurisdictional discovery. The particular issues and potential lines of questioning raised by Defendants/Intervenors in response to the PO Motion exceed the scope of jurisdictional discovery, with the exception that Defendants/Intervenors may ask questions regarding the alleged agency relationship between KT and Plaintiff. Finally, regarding the patent submissions and "essentiality evaluations," the Court finds that such contacts may be relevant to personal jurisdiction. However, Defendants/Intervenors must limit their questions to *contacts* made to Avanci, LLC and Sisvel International S.A. instead of the *details underlying those contacts*, such as which patents were submitted for evaluation.

---

[3] For example, the license may cover only a certain geographic region, or the parties to the license may consent to jurisdiction for disputes in particular forums.
[4] Here, Defendants/Intervenors have not even identified any ambiguous license terms.

### B.     The MTC (Dkt. No. 169)

In the MTC, Defendants/Intervenors request the Court to compel KT to produce a Rule 30(b)(6) witness to testify to the same issues and questions raised in the PO Motion. The Court has provided guidance above on the proper scope of questioning for the Rule 30(b)(6) jurisdictional discovery witness. The Court therefore finds that the MTC should be denied.

### III.    CONCLUSION

For the foregoing reasons, the Court finds that the PO Motion (Dkt. No. 168) should be and hereby is **GRANTED**. The Court further finds that the MTC (Dkt. No. 169) should be and hereby is **DENIED**.

Accordingly, it is **ORDERED** that Defendants/Intervenors shall depose KT's Rule 30(b)(6) witness, consistent with this Order, within fourteen (14) days of entry of this Order. The Court recognizes that KT intends to offer a witness based in Korea, which potentially presents logistical issues. However, given the Parties' repeated issues regarding the scope of jurisdictional discovery, the Parties are further **ORDERED** to conduct the deposition during this Court's business hours such that the Parties may raise any mid-deposition disputes with the Court's discovery hotline.

**So ORDERED and SIGNED this 23rd day of December, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE