**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PEGASUS WIRELESS INNOVATION LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS *et al.*, <br><br> *Defendants*, <br><br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br><br> *Intervenors*, | Case No. 2:23-cv-00640-JRG (Lead Case) |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, <br><br> *Counterclaim-Plaintiff*, <br><br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br><br> *Intervenors*, <br><br> v. <br><br> PEGASUS WIRELESS INNOVATION LLC, <br><br> *Counterclaim-Defendant*, <br><br> KT CORPORATION, <br><br> *Third-Party Defendant*, | Case No. 2:23-cv-00640-JRG (Lead Case) |
| PEGASUS WIRELESS INNOVATION LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> AT&T CORP. *et al.*, <br><br> *Defendants*, <br><br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br><br> *Intervenors*, | Case No. 2:23-cv-00638-JRG (Member Case) |

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC,<br><br>   *Counterclaim-Plaintiff*,<br><br>ERICSSON INC. and NOKIA OF AMERICA CORP.,<br><br>   *Intervenors*,<br><br>  v.<br><br>PEGASUS WIRELESS INNOVATION LLC,<br><br>   *Counterclaim-Defendant,*<br><br>KT CORPORATION,<br><br>   *Third-Party Defendant*, | Case No. 2:23-cv-00638-JRG<br>(Member Case) |
| PEGASUS WIRELESS INNOVATION LLC,<br><br>   *Plaintiff*,<br><br>  v.<br><br>T-MOBILE USA, INC. *et al.,*<br><br>   *Defendants*,<br><br>ERICSSON INC. and NOKIA OF AMERICA CORP.,<br><br>   *Intervenors*, | Case No. 2:23-cv-00639-JRG<br>(Member Case) |
| T-MOBILE USA, INC.,<br><br>   *Counterclaim-Plaintiff*,<br><br>ERICSSON INC. and NOKIA OF AMERICA CORP.,<br><br>   *Intervenors*,<br><br>  v.<br><br>PEGASUS WIRELESS INNOVATION LLC,<br><br>   *Counterclaim-Defendant,*<br><br>KT CORPORATION,<br><br>   *Third-Party Defendant*, | Case No. 2:23-cv-00639-JRG<br>(Member Case) |

## **PLAINTIFF AND COUNTERCLAIM DEFENDANT PEGASUS WIRELESS INNOVATION LLC'S PARTIAL MOTION TO DISMISS INTERVENORS' AND DEFENDANTS' AMENDED COUNTERCLAIMS AND MOTION TO SEVER KT CORPORATION**

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................................... 1

Factual Background ............................................................................................................... 2

Legal Standard ...................................................................................................................... 4

Argument ............................................................................................................................... 4

    I.    Defendants were required to allege facts showing an actual refusal to deal. ..................... 5

    II.    Defendants alleged only a fear of a FRAND violation, not an actual FRAND violation ... 7

    III.   KT should be severed because it has separate legal obligations based on a different pool of patents unrelated to this case. ................................................................................. 11

Conclusion ........................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*8 Erie St. JC LLC v. City of Jersey City*,
  2021 WL 689147 (D.N.J. Feb. 19, 2021) ................................................................10

*3G Licensing, S.A. v. HTC Corp.*,
  2023 WL 34553 (D. Del. Jan. 4, 2023)....................................................................13

*Apple Inc. v. Samsung Elecs. Co.*,
  2012 WL 1672493 (N.D. Cal. May 14, 2012) ........................................................5, 6

*Applewhite v. Reichhold Chems.*,
  67 F.3d 571 (5th Cir.1995) ......................................................................................12

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co., LTD.*,
  2023 WL 5284943 (E.D. Tex. July 28, 2023) .........................................................10

*Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air
  Conditioning, Inc.*,
  2009 WL 382713 (E.D. La. Feb. 11, 2009) .............................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................4

*Burton v. Allstate Ins. Co.*,
  2009 WL 365744 (E.D. La. Feb. 11, 2009) .............................................................12

*Calderwood v. Harrison Cnty. Jail*,
  2022 WL 2184776 (E.D. Tex. May 26, 2022)..........................................................12

*Colonial Funding Network, Inc. v. McNider Marine, LLC*,
  2017 WL 5633160 (S.D.N.Y. Nov. 21, 2017)..........................................................13

*Ericsson Inc. v. Samsung Elecs. Co.*,
  2007 WL 1202728 (E.D. Tex. Apr. 20, 2007) .........................................................14

*Fung-Schwartz v. Cerner Corp.*,
  2019 WL 4393022 (S.D.N.Y. Sept. 13, 2019)..........................................................10

*G+ Commc'ns, LLC v. Samsung Elecs. Co.*,
  2024 WL 233222 (E.D. Tex. Jan. 22, 2024).................................................5, 6, 8, 15

*Golden Scorpio Corp. v. Steel Horse Bar & Grill*,
  596 F. Supp. 2d 1282 (D. Ariz. 2009) .....................................................................13

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
    2018 WL 6617795 (E.D. Tex. Dec. 17, 2018) ................................................................5, 6

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
    407 F. Supp. 3d 631 (E.D. Tex. 2019) ...............................................................5, 14

*In re Taasera Licensing LLC, Patent Litigation*,
    2023 WL 2917650 (E.D. Tex. Mar. 15, 2023) .............................................14

*Kitziger v. Gulfstream Servs., Inc.*,
    2020 WL 12761584 (E.D. La. Dec. 18, 2020)..........................................17

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) .............................................................4

*Martin v. Am. Equity Ins. Co.*,
    185 F. Supp. 2d 162 (D. Conn. 2002) ..................................................10

*Microsoft Corp. v. Motorola, Inc.*,
    2012 WL 4827743 (W.D. Wash. Oct. 10, 2012) ....................................11

*Optis Wireless Tech., LLC v. Apple Inc.*,
    2021 WL 2349343 (E.D. Tex. Apr. 14, 2021) .........................................5

*Realtek Semiconductor Corp. v. LSI Corp.*,
    2012 WL 4845628 (N.D. Cal. Oct. 10, 2012)......................................7, 9

*Shareef v. Allstate Vehicle & Prop. Ins. Co.*,
    2018 WL 9963834 (W.D. Tex. Oct. 23, 2018)........................................10

*Slep-Tone Ent. Corp. v. Mainville*,
    2011 WL 4713230 (W.D.N.C. Oct. 6, 2011)..........................................13

*Thompson v. City of Waco, Texas*,
    764 F.3d 500 (5th Cir. 2014) .............................................................4

*U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*,
    8 F. Supp. 3d 339 (S.D.N.Y. 2014)......................................................13

*Westmoreland v. Sadoux*,
    299 F.3d 462 (5th Cir. 2002) .............................................................16

*Williams v. Transp. Serv. Co. of Ill.*,
    2008 WL 2002283 (E.D. La. May 7, 2008)........................................12, 16

## Introduction

Pegasus Wireless Innovation LLC ("Pegasus") moves to dismiss the counterclaims filed by intervenors Ericsson Inc. ("Ericsson") and Nokia Corporation of America ("Nokia") and defendants T-Mobile USA, Inc. ("T-Mobile"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), and New Cingular Wireless PCS, LLC ("AT&T") (collectively, "Defendants").[1] Dkt. Nos. 182–190. Defendants assert counterclaims against Pegasus and KT Corporation for breach of contract, failure to negotiate in good faith, and a declaratory judgment that they breached their FRAND obligations. Defendants' allegations are insufficient to support these counterclaims.

Defendants' counterclaims are based on the idea that two provisions in a non-disclosure agreement (NDA) that Pegasus proposed during the parties' licensing discussions are sufficient to show bad-faith negotiation.[2] Def. Amend. Countercl. ¶ 26; Interv. Amend. Countercl. ¶ 24. Yet the two provisions at the heart of Defendants' claims are industry-standard NDA provisions that (1) acknowledged that the parties' negotiations were in good faith and (2) prevented the parties from using settlement discussion and offers outside of settlement negotiations. Defendants do not explain how a reciprocal acknowledgment of ***good faith*** somehow demonstrates Pegasus's ***bad faith***. Nor do Defendants explain how entering into an NDA that prevents disclosure of confidential information—which is the entire point of an NDA—could amount to bad-faith

---

[1] Although the term "Defendants" does not accurately describe Pegasus's counterparties, this motion refers to Pegasus's counterparties as "Defendants" for simplicity.

[2] Intervenors' amended counterclaims use identical language and identical paragraph numbering. All cites to "Interv. Amend. Countercl." can be read as referring to either of the two sets of intervenors' amended counterclaims. Similarly, defendants' amended counterclaims use identical language and identical paragraph numbering. All cites to "Def. Amend. Countercl." can be read as referring to any of the three sets of defendants' amended counterclaims. The allegations in defendants' and intervenors' amended counterclaims are nearly identical. The paragraph numbering only differs by two due to the differing descriptions of the parties at the beginning of the amended counterclaims.

negotiations on its own. More fundamentally, even drawing all inferences in Defendants' favor, neither of these NDA provisions show what Defendants are required to plead under the law for such a claim to stand: an unwillingness by Pegasus to bargain. Just the opposite.

Outside of these two proposed NDA provisions, Defendants fail to allege other necessary facts to support their counterclaims. Defendants provide no specifics about any offer made by Pegasus. Defendants do not specify the patents that Pegasus allegedly failed to license on FRAND terms. Defendants do not even make clear how Pegasus's negotiations differed between Ericsson, Nokia, T-Mobile, Verizon, and AT&T. These carriers and manufacturers did not plausibly have identical negotiations with Pegasus. Defendants' fact-free pleadings give Pegasus zero notice about which patents underpin their counterclaims, which patent licensing negotiations are at issue (or even which claimed actions are attributed to KT versus Pegasus).

Adding to the confusion, Defendants attempt to join their third-party claims against KT— an unrelated third party that has no current ownership over the patents that Pegasus asserted. KT has different legal obligations (if any) for separate patents that Pegasus does not own and did not assert. Defendants did not and cannot allege any facts showing that their claims against KT and Pegasus arise from the same transaction or occurrence. Joining Defendants' third-party claims against KT will not promote judicial economy and will prejudice Pegasus.

This Court should dismiss Defendants' counterclaims against Pegasus under Rule 12(b)(6) and sever KT from this action under Rules 20 and 21.

## **Factual Background**

According to the allegations in the Defendants' counterclaims, Pegasus allegedly breached its duties under the European Telecommunications Standards Institute's (ETSI) Intellectual Property Rights (IPR) Policy to license essential IPRs on fair, reasonable, and non-discriminatory

2

("FRAND") terms. Def. Amend. Countercl. ¶¶ 9-11, 21; Interv. Amend. Countercl. ¶¶ 7-9, 19. Under ETSI's IPR Policy, when an entity declares an IPR to be essential to ETSI's technical specifications, that entity must also sign an undertaking that it "is prepared to grant irrevocable licenses" on FRAND terms. Def. Amend. Countercl. ¶ 11; Interv. Amend. Countercl. ¶ 9. This undertaking "runs with" the IPRs after transfer. Def. Amend. Countercl. ¶ 13; Interv. Amend. Countercl. ¶ 11.

Defendants allege that either KT or Pegasus owns "patents essential to the 4G and/or 5G cellular standards promulgated by ETSI." Def. Amend. Countercl. ¶ 14; Interv. Amend. Countercl. ¶ 12. Defendants do not make clear which patents underlie their counterclaims, with the exception of a few passing mentions of "including the Asserted Patents." This allegation fails to provide the requisite notice as to the patents and timeframe at issue and even as to which of the two parties the counterclaims pertain.

Defendants' allegations about Pegasus's alleged breach of its FRAND obligations boil down to a few conclusory paragraphs. Defendants allege that KT and Pegasus breached their FRAND obligations by proposing two NDA provisions, one that required Defendants to agree that "the discussions were in good faith" and another that clarified that "the negotiation conduct could not be used for anything other than the limited purpose of engaging in discussions relating to licensing and settlement." Def. Amend. Countercl. ¶ 26; Interv. Amend. Countercl. ¶ 24. Defendants allege that Pegasus and KT "required an overly-restrictive NDA which was designed to conceal [their] FRAND violations." Def. Amend. Countercl. ¶ 28; Interv. Amend. Countercl. ¶ 26. Defendants do not explain what underlying "FRAND violations" Pegasus was attempting to "conceal" or when these violations allegedly occurred. Def. Amend. Countercl. ¶ 28; Interv. Amend. Countercl. ¶ 26. Finally, Defendants allege that Pegasus and KT "discriminated" against

Defendants by failing to offer Defendants a license rate that "is substantially similar to the license rate(s) offered to one or more other firms that are similarly situated." Def. Amend. Countercl. ¶ 147; Interv. Amend. Countercl. ¶ 145. Defendants do not specify what offers Pegasus made, how those offers differed from its offers to Defendants' competitors, or whether Pegasus actually refused to make a similar offer.

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), "a plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (cleaned up)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Thompson*, 764 F.3d at 503 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff's claims must include enough factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## Argument

Defendants have failed to state a claim for breach of contract, failure to negotiate in good faith, and declaratory judgment of breach of obligation arising from commitments to standard-setting organizations (or "FRAND" claims). All three counterclaims require factual allegations demonstrating a bad faith refusal to negotiate. Defendants, however, failed to allege any facts showing that Pegasus acted in bad faith or that negotiations broke down. Instead, Defendants have

alleged a suspicion that Pegasus's proposed NDA might "conceal" unspecified "FRAND violations" and asserted the conclusory allegation that Pegasus somehow discriminated against Defendants. Def. Amend. Countercl. ¶¶ 28-29, 147; Interv. Amend. Countercl. ¶¶ 26-27, 145. This is not enough to state a claim.

## I.    Defendants were required to allege facts showing an actual refusal to deal.

Defendants' counterclaims do not demonstrate how Pegasus violated the ETSI Intellectual Property Rights Policy ("ETSI Policy"), which requires patent owners to provide an "undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ('FRAND') terms and conditions." Def. Amend. Countercl. ¶ 11; Interv. Amend. Countercl. ¶ 9; Dkt. No. 182-A (ETSI Policy) at § 6.1. Courts have held that this FRAND obligation "at the very least created a duty to negotiate in good faith." *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1672493, at *12 (N.D. Cal. May 14, 2012); *see also HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 407 F. Supp. 3d 631, 636–37 (E.D. Tex. 2019) ("the Court finds that, as a matter of French law, to satisfy the FRAND obligation, a SEP-owner must either (1) offer a FRAND license, or (2) negotiate in good faith towards a FRAND license."). A lack of good faith is synonymous with bad faith. *See, e.g.*, *Optis Wireless Tech., LLC v. Apple Inc.*, 2021 WL 2349343, at *3 & n.1 (E.D. Tex. Apr. 14, 2021) (discussing the ETSI FRAND obligation in terms of bad faith). An SEP holder does not have a unilateral duty to deal in good faith. Rather, the SEP holder and the prospective licensee "are subject to reciprocal obligations of good faith during negotiations for a license to a FRAND-encumbered patent." *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, 2024 WL 233222, at *5 (E.D. Tex. Jan. 22, 2024).

In cases concerning FRAND claims where courts have denied motions to dismiss, the plaintiffs have alleged more than a fear of a potential FRAND violation—they have alleged facts showing an actual refusal to negotiate. In *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 2018

WL 6617795 (E.D. Tex. Dec. 17, 2018), for example, the court denied a motion to dismiss, but the counterclaimant had alleged that it "flew to Taiwan to meet with HTC on at least three occasions and furnished HTC with factual information regarding the basis of its offers as it 'was under the impression that HTC was likewise working to arrive at the terms of a FRAND license.'" *Id.* at *5. HTC, however, did not make any counteroffers and "made no effort to close a deal" with the counterclaimant. *Id.*

Likewise, in *Apple*, the court denied a motion to dismiss a FRAND counterclaim, but it did so based on several allegations arguably showing that the defendant had refused to negotiate:

> For example, Apple alleges that Samsung refused to quote licensing terms, and when it finally did, those terms were not fair, reasonable and non-discriminatory. Apple also alleges that Samsung's negotiation tactics were discriminatory and that Samsung retaliated against Apple by instigating litigation and refusing to grant FRAND licenses when Apple asserted its own non-standards essential patents against Samsung in this litigation. These factual allegations sufficiently support a claim that Samsung has breached its duty to negotiate FRAND terms in good faith.

*Apple Inc.*, 2012 WL 1672493, at *12.

In *G+ Communications*, the court similarly denied a motion to dismiss when the counterclaimant had adequately alleged a refusal to negotiate based on several factual allegations: "(1) failing to negotiate in good faith towards a FRAND license, (2) refusing to license patents that it contends are essential to 3GPP standards to Samsung on FRAND terms, (3) seeking a preliminary injunction to improperly strengthen GComm's negotiating position to extract unfair royalties as an end-run around GComm's FRAND obligations, (4) initiating this lawsuit without abiding by the terms of those commitments and obligations, and (5) failing to negotiate in good faith by seeking and obtaining a preliminary injunction against Samsung in Brazil in the early stages of discussions, and seeks injunctive remedies as improper and undue leverage against Samsung in an effort to force Samsung into unreasonable license terms." *G+ Commc'ns*, 2022 WL 4593080, at *2 (cleaned up).

6

And in *Realtek Semiconductor Corp. v. LSI Corp.*, 2012 WL 4845628, at *2 (N.D. Cal. Oct. 10, 2012), the court denied a motion to dismiss when the counterclaimant had alleged several facts showing that the counter-defendant refused to negotiate in good faith, including that (1) the parties exchanged a string of letters, (2) the counter-defendant's proposals demanded "a royalty exceeding the selling price of [infringer's] products," and (3) the counter-defendant had made "licensing proposals to other component manufacturers that included a different royalty structure that did not have the effect of requiring a royalty that exceeds the selling price of the component."

Together, these cases demonstrate that adequately pleading a breach of a FRAND obligation requires the plaintiff to allege facts showing an actual refusal to deal or make an offer, such as refusing to provide information or counteroffers or refusing to quote licensing terms. None of the plaintiffs in these cases survived a motion to dismiss based on an anticipated FRAND violation.

## II. Defendants alleged only a fear of a FRAND violation, not an actual FRAND violation.

These cases stand in stark contrast to the allegations here. Defendants do not allege that Pegasus refused to deal or committed any other FRAND violation. Instead, Defendants allege that two provisions in Pegasus's proposed NDA were designed to "conceal" other unspecified FRAND violations. Def. Amend. Countercl. ¶ 28; Interv. Amend. Countercl. ¶ 26. This argument falls flat. Defendants do not provide a single detail about the alleged "FRAND violations" that these two NDA provisions were designed to conceal. Nor do Defendants explain how two boilerplate NDA provisions—on their own—amount to a FRAND violation.

The first NDA provision that Defendants cite is one in which both parties acknowledge the "good faith" nature of their negotiations. Def. Amend. Countercl. ¶ 26; Interv. Amend. Countercl. ¶ 24. Defendants do not explain how a reciprocal provision acknowledging the ***good faith*** nature of the negotiations is somehow indicative of Pegasus's ***bad faith***. Nor do Defendants explain how

this provision could provide some type of negotiation advantage to Pegasus. It is well-established that both parties to a FRAND negotiation must act in good faith, not just the licensor. *See G+ Commc'ns, LLC*, 2024 WL 233222, at *5.

Defendants next complain of a provision that allegedly stated "the negotiation conduct could not be used for anything other than the limited purpose of engaging in discussions relating to licensing and settlement." Def. Amend. Countercl. ¶ 26; Interv. Amend. Countercl. ¶ 24. Defendants fail to allege how this provision on its own is a FRAND violation. Nor do Defendants explain how this proposed provision facilitated any actual FRAND violation given that the parties never agreed to it, leaving the Defendants free to disclose all communications between the parties. Defendants never allege that Pegasus walked away from negotiations, refused to consider any alternatives to their language, or refused to bargain in the absence of this provision. Defendants instead allege that this proposed provision was designed to "conceal" FRAND violations. Def. Amend. Countercl. ¶ 28; Interv. Amend. Countercl. ¶ 26. Defendants do not specify any details about these FRAND violations. Defendants do not specify if the alleged FRAND violations had already occurred or were yet to occur. Defendants do not allege any facts about any past FRAND violations. Defendants also fail to allege any facts about a feared future FRAND violation. But even if they had, fear of a future FRAND violation is not a FRAND violation.

Defendants' theory of FRAND breach, if accepted, also sets a dangerous precedent that an NDA is enough to violate FRAND obligations. NDAs are a standard feature of licensing negotiations because these negotiations almost universally involve confidential financial, technical, and business information. The entire purpose of an NDA is to prevent the disclosure of this confidential information. Defendants seek to weaponize a licensor's need to protect confidential information and turn it into proof of bad-faith negotiations.

8

Outside of these two NDA provisions, Defendants' counterclaims include only boilerplate legal statements that are devoid of any factual allegations. Defendants assert Pegasus and/or KT "have required unreasonable and supra-FRAND rates for a license from [T-Mobile, Verizon, and AT&T] and have failed to make any offer to [Nokia and Ericsson]." Def. Amend. Countercl. ¶ 29; Interv. Amend. Countercl. ¶ 27. Defendants, however, did not allege facts sufficient to demonstrate that Pegasus negotiated in bad faith because they did not allege a single fact about their negotiations with Pegasus. Defendants did not allege that Pegasus ever communicated a refusal to deal or refused to make a FRAND offer or grant a FRAND license. Defendants did not recite the terms of any offers or counteroffers. Defendants did not allege what they did (if anything) to negotiate a license with Pegasus.

Defendants also include the allegation, without providing any supporting facts, that Pegasus "discriminated against [Defendants] by failing to offer [Defendants], a license rate that, when applied to [Defendants], is substantially similar to the license rate(s) offered to one or more other firms that are similarly situated, including one or more of [Defendants'] competitors in the telecommunications industry for infrastructure." Def. Amend. Countercl. ¶ 147; Interv. Amend. Countercl. ¶ 145. In *Realtek Semiconductor Corp.*, the court denied the defendant's motion to dismiss after the plaintiff included factual allegations about the "specific set of terms" in defendant's licensing offer—notably, that the defendant's offer was inherently unreasonable because it demanded "a royalty exceeding the selling price of [infringer's] products." *Realtek Semiconductor Corp.*, 2012 WL 4845628, at *2. Outside of the NDA provision, the Defendants have not included any facts about the "specific set of terms" of any offer by Pegasus. Defendants do not explain how any offer by Pegasus differed from any offer given to Defendants' competitors. Defendants do not even allege which patents or pool patents underlie their claims that Pegasus

9

failed to negotiate in good faith. Nor do Defendants allege how negotiations between Pegasus and AT&T, Verizon, T-Mobile, Ericsson, and Nokia differed. Defendants further fail to distinguish between their negotiations with KT and Pegasus, two separate companies that share no corporate relationship. Def. Amend. Countercl. ¶¶ 5,6; Interv. Amend. Countercl. ¶¶ 3,4. These allegations are insufficient to show bad faith.

Cases outside the context of FRAND negotiations further illustrate the insufficiency of Defendants' allegations. In other cases, courts required more factual allegations to plead bad faith than baldly asserting that a defendant acted in bad faith. In *Shareef v. Allstate Vehicle & Prop. Ins. Co.*, 2018 WL 9963834, at *4 (W.D. Tex. Oct. 23, 2018), the court held that numerous allegations that defendants "fail[ed] to attempt in good faith to make a prompt, fair, and equitable settlement of her claim" were not sufficient to state a claim because they lacked factual detail supporting a finding of bad faith. In *Martin v. Am. Equity Ins. Co.*, 185 F. Supp. 2d 162, 164 (D. Conn. 2002), the court rejected a denial of coverage claim because the plaintiff did not allege any facts amounting to bad faith, and the court could not infer bad faith based on the plaintiff's "conclusory allegations." In *8 Erie St. JC LLC v. City of Jersey City*, 2021 WL 689147, at *8 (D.N.J. Feb. 19, 2021), the court dismissed a claim where bad faith was an element because the plaintiff's complaint did "not include allegations demonstrating that any Defendant's conduct was motivated by bad faith." And in *Fung-Schwartz v. Cerner Corp.*, 2019 WL 4393022, at *10 (S.D.N.Y. Sept. 13, 2019), the court dismissed an unfair competition claim with a bad-faith element because, "although Plaintiffs now plead facts to establish how Defendants benefited from its actions, they have failed to allege any new facts demonstrating that Defendants were acting in bad faith."

The only other fact that Defendants could ostensibly point to is the filing of this lawsuit, which does not by itself show bad-faith negotiation. In *Atlas Glob. Techs. LLC v. TP-Link Techs.*

*Co., LTD.*, 2023 WL 5284943, at *4 (E.D. Tex. July 28, 2023), the Court held as a matter of law that the IEEE did not create any "legal requirement to present a pre-suit FRAND offer." While IEEE obligations differ in some respects from ETSI's obligations, they both require good-faith negotiations. *Microsoft Corp. v. Motorola, Inc.*, 2012 WL 4827743, at *6 (W.D. Wash. Oct. 10, 2012) ("Motorola's commitments to the IEEE and ITU require that it negotiate in good faith towards RAND terms."). And neither the IEEE nor ETSI explicitly or implicitly bar initiation of a lawsuit during negotiations or before presenting a FRAND offer—nor is this factual allegation actually pled. It is not on the responding party to guess what facts underly a counterclaimant's allegations.

This Court should dismiss Defendants' Twelfth, Thirteenth, and Fourteenth counterclaims against Pegasus for breach of contract, failure to negotiate in good faith, and declaratory judgment of breach of FRAND.

### III.    KT should be severed because it has separate legal obligations based on a different pool of patents unrelated to this case.

Pegasus also moves under FRCP 20 and 21 to sever or drop KT from this case. Defendants admit KT and Pegasus own different patents. *See* Def. Amend. Countercl. ¶ 14; Interv. Amend. Countercl. ¶ 12. Although Defendants do not specify any patents that form the basis of their counterclaims.

Defendants can only assert FRAND counterclaims against the owner of an essential patent. Pegasus is the only party that has any possible FRAND obligations with respect to the patents it owns, and KT has no FRAND obligations with respect to those patents.

Defendants' claims against KT necessarily stem from a pool of patents that Pegasus does not own, did not (and cannot) assert, and are not at issue in this case. Joining KT does not satisfy FRCP 20's transaction-or-occurrence requirement or promote the policies underlying FRCP 21.

11

FRCP 21 allows a court, "[o]n motion or on its own," to "at any time, on just terms, add or drop a party." A district court has "broad discretion to sever claims under Rule 21." *Calderwood v. Harrison Cnty. Jail*, 2022 WL 2184776, at *2 (E.D. Tex. May 26, 2022). In determining whether to sever claims against a party, courts look to five factors: "(1) whether the claims arose out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or judicial economy would be promoted; (4) whether prejudice would be averted by severance, and (5) whether different witnesses and documentary proof are required for separate claims." *Williams v. Transp. Serv. Co. of Ill.*, 2008 WL 2002283, at *2 (E.D. La. May 7, 2008); *see also Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir.1995) (holding that a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice"). Courts also may sever a defendant under FRCP 21 if the defendant does not qualify for permissive joinder. *Burton v. Allstate Ins. Co.*, 2009 WL 365744, at *1 (E.D. La. Feb. 11, 2009). Under FRCP 20, which governs permissive joinder, a party may add multiple defendants to one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Courts should use their discretion to deny permissive joinder of claims against an additional party if the claims will result in "prejudice, expense or delay." Charles A. Wright & Arthur R. Miller, 7 Fed. Prac. & Proc. Civ. § 1652 (3d ed. 2023) ("Wright & Miller").

Courts applying FRCP 20's "transaction or occurrence" requirement have prevented plaintiffs from joining defendants who are being sued for allegedly violating the same legal obligations, even if the defendants committed "the same type of violations in the same way." Wright & Miller at § 1653. Courts have applied this reasoning across a variety of contexts and

legal claims. For example, in *Colonial Funding Network, Inc. v. McNider Marine, LLC*, 2017 WL 5633160, at *3 (S.D.N.Y. Nov. 21, 2017), the court severed the defendants in a case involving alleged breaches of a loan agreement because each loan agreement involved a different "transaction or occurrence" and courts "routinely sever claims arising out of separate loan transactions with different lenders (or even the same lender)." In *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1284–85 (D. Ariz. 2009), the court severed a defendant restaurant using the "Steel Horse Bar & Grill" variation of the plaintiff restaurant's "Steel Horse" trademark, even though other defendants used substantially similar restaurant names. The court held that joinder was inappropriate because the claims against the restaurant defendant were premised upon its own independent acts of infringement, unfair competition, and dilution, which were separate and distinct from the allegedly improper acts of any of the other defendants. *Id.*; *see also Slep-Tone Ent. Corp. v. Mainville*, 2011 WL 4713230, at *4 (W.D.N.C. Oct. 6, 2011) ("Although each Defendant allegedly infringed upon the same trademark, each Defendant allegedly did so separately, in time and place, from the other Defendants with no knowledge that the other Defendants were also engaged in any alleged infringement of their own."). In *U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*, 8 F. Supp. 3d 339, 344 (S.D.N.Y. 2014), the court held that a relator plaintiff could not join several defendants in the same lawsuit simply because they each submitted allegedly fraudulent bills for services through the same Medicaid program.

In the patent law context, courts have applied similar reasoning to prevent parties from joining superficially similar claims. For example, in *3G Licensing, S.A. v. HTC Corp.*, 2023 WL 34553, at *2 (D. Del. Jan. 4, 2023), the court held that two plaintiffs could not assert their claims in the same case because, even though the patents related to cellular communications, the patents were "directed to different and separate aspects of cellular technology," the patents had "different

owners and different inventors," and the two plaintiffs were "separate entities with no corporate relationship." And in *Ericsson Inc. v. Samsung Elecs. Co.*, 2007 WL 1202728, at *3 (E.D. Tex. Apr. 20, 2007), this Court applied FRCP 42 to sever the defendant's FRAND counterclaims from the plaintiff's related patent infringement claims, even though the "historical facts underlying" the defendant's counterclaims "involve[d] two very large telecommunication companies engaged in a licensing dispute" over the very patents at issue in the plaintiff's patent infringement claims.[3]

Defendants' counterclaims against Pegasus and third-party claims against KT do not arise out of a common transaction or occurrence because the claims against KT and Pegasus necessarily stem from different pools of patents and/or different timeframes. First, Defendants improperly assert declaratory judgment claims for non-infringement against KT in their first through eleventh claims because KT does not have the legal authority to enforce those patents. In *In re Taasera Licensing LLC, Patent Litigation*, 2023 WL 2917650, at *11 (E.D. Tex. Mar. 15, 2023), this Court dismissed a non-infringement declaratory judgment action for lack of subject matter jurisdiction because it was unable to determine whether the defendant had any legal right to enforce the asserted patents. Defendants admit KT and Pegasus own different patents. *See* Def. Amend. Countercl. ¶ 14; Interv. Amend. Countercl. ¶ 12. And Defendants make no allegations that KT has any legal right to enforce the asserted patents. Second, the ETSI Policy makes clear that FRAND obligations are binding ***only*** on the patent "owner." ETSI Policy § 6.1; *see also HTC Corp.*, 407 F. Supp. 3d at 634 ("A commitment to license creates a contract between the SEP owner and the SSO" in which "[s]tandards implementers are third-party beneficiaries under such contracts."

---

[3] FRCP 21 and FRCP 42 turn on similar considerations. *See Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air Conditioning, Inc.*, 2009 WL 382713, at *5 (E.D. La. Feb. 11, 2009) (noting that "some district courts in the Fifth Circuit apply the same considerations to Rule 21 requests for severance and Rule 42(b) requests for separate trials").

(internal citation omitted)); *G+ Commc'ns, LLC*, 2024 WL 233222, at *7 (holding that the ETSI FRAND obligation "runs with the patent"). Defendants also acknowledge that FRAND obligations are tied to ownership of the patents: "FRAND commitment runs with and continues to encumber the patents after the transfer." Def. Amend. Countercl. ¶ 14; Interv. Amend. Countercl. ¶ 12.

While Defendants do not make clear exactly which patents underlie their FRAND counterclaims and third-party claims, Defendants can only assert FRAND counterclaims against the owner of an essential patent. Pegasus is the only party that has any possible FRAND obligations with respect to the patents it owns, and KT has no FRAND obligations with respect to those patents. Likewise, KT is the only party that has any possible FRAND obligations with respect to the patents *it* owns, and Pegasus has no FRAND obligations with respect to those patents. Thus, Defendants' third-party claims against KT must stem from an unrelated pool of KT-owned patents for which Pegasus did not (and cannot) have any FRAND obligation—or at a minimum would be through separate negotiations at a different time from any patents Pegasus now owns.[4] In short, different ownership, different negotiation history, and the FRAND legal obligations run to different parties. Third party claims based on negotiations over KT-owned patents introduce new, unrelated licensing negotiations to this case that are not part of the same transaction and occurrence as any negotiations over any Pegasus-owned patents.

Defendants seemingly attempt to overcome the lack of relationship between the KT-owned patents and the Pegasus-owned patents by alleging that Pegasus is an "agent for KT Corp." Def. Amend. Countercl. ¶ 18; Interv. Amend. Countercl. ¶ 16. Pegasus is an agent for KT as to patents

---

[4] While Pegasus has located cases where a subsequent essential patent owner has allegedly breached FRAND encumbrances, none of the cases Pegasus located included a FRAND claim asserted jointly against **both** a current and former assignee of the patent, or alleged a FRAND claim based on an agency theory. *See G+ Commc'ns, LLC*, 2022 WL 4593080, at *2; *Cellular Commc'ns Equip. LLC*, 2018 WL 4175907, at *1.

*KT* owns, however, not patents that Pegasus owns and asserted here. Pegasus is not and cannot be a licensing agent for KT with respect to patents that Pegasus owns. The only patents that Pegasus could plausibly license for KT are separate patents that KT owns.[5]

FRCP 21 further supports severance because joining counterclaims against KT will not further any of the policies underlying FRCP 21. *See Williams*, 2008 WL 2002283, at *2. As noted above, Defendants' third-party claims against KT stem from a different transaction and occurrence. *See id.* Joining Defendants' third-party claims against KT will also require different "witnesses and documentary proof" and will not promote "judicial economy" because these claims stem from an entirely different set of patents. *Id.* Defendants' third-party claims against KT will require a factfinder to establish a FRAND royalty rate for the KT-owned patents. The evidence and testimony that establishes this FRAND royalty rate will play no role establishing a FRAND royalty rate for the Pegasus-owned patents. The same is true of any technological proof that will be required. Defendants' third-party claims against KT presumably (though Defendants do not provide any underlying factual allegations) will involve patented technology unrelated to the Pegasus-owned patents. And proving a breach of KT's FRAND obligations will presumably involve distinct evidence and testimony about KT's separate negotiation history over the KT-owned patents, which implicate KT's own FRAND obligations rather than Pegasus's FRAND obligations. Lumping together all of this different evidence and testimony about different pools of patents will not promote judicial economy.

---

[5] With respect to Pegasus, if Defendants' counterclaims stem from Pegasus's actions as an agent in licensing KT-owned patents, Defendants' counterclaims would be vulnerable to an entirely different set of legal defenses because an agent generally cannot be liable for breaching a principal's contractual obligations. *See Westmoreland v. Sadoux*, 299 F.3d 462, 466 (5th Cir. 2002) ("An agent is not ordinarily liable under the contract he executes on behalf of his principal.").

Joining the KT third-party claims to this case will also cause prejudice to Pegasus by potentially causing jury confusion. As outlined above, Defendants' counterclaims against Pegasus and third-party claims against KT necessarily involve different FRAND royalty rates, technology, patent ownership, and underlying negotiation histories, all of which will depend on different evidence and testimony. By inappropriately lumping KT and Pegasus together, Defendants' third-party claims "could ultimately lead to confusion of the jury." *Kitziger v. Gulfstream Servs., Inc.*, 2020 WL 12761584, at *7 (E.D. La. Dec. 18, 2020).

In sum, Defendants' third-party claims against KT involve separate patents, separate parties, separate evidence, and separate legal obligations. These claims have no place in this lawsuit. This Court should sever KT from this action.

## <u>Conclusion</u>

Pegasus requests that this Court dismiss Defendants' Twelfth, Thirteenth, and Fourteenth Counterclaims against Pegasus and sever KT from this action.

DATED: January 17, 2025                    Respectfully submitted,

By:    */s/ Michael Steelman*

    Max L. Tribble – Lead Counsel
       Texas State Bar No. 20213950
       mtribble@susmangodfrey.com
    Joseph S. Grinstein
       Texas State Bar No. 24002188
       jgrinstein@susmangodfrey.com
    Corey M. Lipschutz
       Texas State Bar No. 24099303
       clipschutz@susmangodfrey.com
    Michael Steelman
       Texas State Bar No. 24138509
       msteelman@susmangodfrey.com
    **SUSMAN GODFREY L.L.P.**

1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Kalpana Srinivasan
    California State Bar No. 237460
    ksrinivasan@susmangodfrey.com
Jordan Rux
    Texas State Bar No. 24106380
    jrux@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Daniel J. Shih
    Washington State Bar No. 37999
    dshih@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

Andrea L. Fair
    Texas State Bar No. 24078488
    andrea@millerfairhenry.com
**MILLER, FAIR & HENRY, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF AND
COUNTERCLAIM DEFENDANT
PEGASUS WIRELESS INNOVATION LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/Michael Steelman
Michael Steelman