███████████████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PEGASUS WIRELESS INNOVATION LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS *et al.,* <br><br> *Defendants*, <br><br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br><br> *Intervenors*, | Case No. 2:23-cv-00640-JRG (Lead Case) |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, <br><br> *Counterclaim-Plaintiff*, <br><br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br><br> *Intervenors*, <br><br> v. <br><br> PEGASUS WIRELESS INNOVATION LLC and KT CORPORATION, <br><br> *Counterclaim-Defendant and Third-Party Defendant*. | Case No. 2:23-cv-00640-JRG (Lead Case) |
| PEGASUS WIRELESS INNOVATION LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> AT&T CORP. *et al.,* <br><br> *Defendants*, <br><br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br><br> *Intervenors*, | Case No. 2:23-cv-00638-JRG (Member Case) |

██████████████████████████████████

| | | |
|---|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, <br><br>     *Counterclaim-Plaintiff,* <br><br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br><br>     *Intervenors,* <br><br> v. <br><br> PEGASUS WIRELESS INNOVATION LLC and KT CORPORATION*,* <br><br>     *Counterclaim-Defendant and Third-Party Defendant.* | § § § § § § § § § § § § § § § § § § | Case No. 2:23-cv-00638-JRG (Member Case) |
| PEGASUS WIRELESS INNOVATION LLC, <br><br>     *Plaintiff,* <br><br> v. <br><br> T-MOBILE USA, INC. *et al.,* <br><br>  *Defendants*, <br><br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br><br>     *Intervenors,* | § § § § § § § § § § § § § § § § § | Case No. 2:23-cv-00639-JRG (Member Case) |
| T-MOBILE USA, INC., <br><br>     *Counterclaim-Plaintiff,* <br><br> ERICSSON INC. and NOKIA OF AMERICA CORP., <br><br>     *Intervenors,* <br><br> v. <br><br> PEGASUS WIRELESS INNOVATION LLC and KT CORPORATION*,* <br><br>     *Counterclaim-Defendant and Third-Party Defendant.* | § § § § § § § § § § § § § § § § § | Case No. 2:23-cv-00639-JRG (Member Case) |

## DEFENDANTS AND INTEVENORS' *DAUBERT* MOTION AND MOTION TO STRIKE CERTAIN OPINIONS OF DR. MARTIN FEUERSTEIN

███████████████████████████

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................1

II.     LEGAL STANDARDS .......................................................................................2

        A.      *Daubert* as to Use of Inferior Non-Infringing Alternatives ....................2

        B.      Untimely Expert Reports ..........................................................................3

        C.      Rule 26 Violations and Excluding Evidence ...........................................3

        D.      Overall Market Revenue Opinions ...........................................................4

III.    DR. FEUERSTEIN'S BENEFITS ANALYSIS IS UNRELIABLE ..............................4

        A.      Dr. Feuerstein Fails To Apply The "Next Best" Non-Infringing
                Alternatives, And Instead Uses Inferior Alternatives To Upwardly Skew
                His Throughput Estimations ......................................................................4

                1.      The '161 Patent ..............................................................................5

                2.      The '000, '931, and '644 Patents ...................................................7

                3.      The '631 and '932 Patents .............................................................8

                4.      The '272 Patent ............................................................................10

IV.     DR. FEUERSTEIN'S SECOND SUPPLEMENTAL REPORT IS
        UNTIMELY....................................................................................................10

V.      THEORIES BASED ON WITHHELD FACTS SHOULD BE STRICKEN .............12

VI.     PREVIOUSLY UNACCUSED PRODUCTS SHOULD BE STRICKEN .................14

VII.    OPINIONS ON OVERALL INDUSTRY REVENUES SHOULD BE
        STRICKEN....................................................................................................14

VIII.   THE NEW '161 PATENT INFRINGEMENT THEORY SHOULD BE
        STRICKEN....................................................................................................15

████████████████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*BMC Software, Inc. v. Servicenow, Inc.*,
  No. 2:14-CV-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016) ....................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)...............................................................................................2, 9, 10

*EcoFactor, Inc. v. Google LLC*,
  No. 2023-1101, 2025 WL 1453149 (Fed. Cir. May 21, 2025) ...................................................3

*Finesse Wireless, LLC v. AT&T Mobility, LLC*,
  No. 2:21-cv-00316-JRG-RSP, 2022 WL 17875791 (E.D. Tex. Dec. 21, 2022) .................4, 15

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997).....................................................................................................10

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970)..................................................................................3

*Grain Processing Corp. v. Am. Maize-Products Co.*,
  185 F.3d 1341 (Fed. Cir. 1999)...................................................................................3, 5

*Headwater Rsch. LLC v. Samsung Elecs. Co., Ltd.*,
  No. 2:23-CV-00103-JRG-RSP, 2025 WL 1071353 (E.D. Tex. Apr. 9, 2025)................3, 4, 11

*Longhorn HD LLC v. NetScout Sys.*,
  No. 2:20-cv-00349, 2022 WL 991696 (E.D. Tex. Mar. 31, 2022) ..........................4, 11, 12, 14

*Mobility Workx, LLC v. Cellco P'ship*,
  No. 4:17-CV-00872, 2019 WL 5721814 (E.D. Tex. Nov. 5, 2019).......................................14

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  904 F.3d 965 (Fed. Cir. 2018)...........................................................................................4

*Salazar v. HTC Corp.*,
  No. 2:16-CV-01096-JRG-RSP, 2018 WL 2033709 (E.D. Tex. Mar. 28, 2018) ..............3, 5, 6

*Sci. Applications Int'l Corp. v. United States*,
  169 Fed. Cl. 643 (2024) ...................................................................................................3

*Solas OLED Ltd. v. Samsung Elecs. Co.*,
  2:21-cv-105-JRG-RSP, 2022 WL 1912864 (E.D. Tex. May 30, 2022) ................................15

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011).....................................................................................4, 15

███████████████████████████

**RULES**

Fed. R. Civ. P. 26........................................................................................................................3

Fed. R. Civ. P. 37........................................................................................................................3

FED. R. EVID. 702........................................................................................................................2

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| A | Expert Report of Dr. Martin J. Feuerstein Regarding Infringement of Pegasus Wireless Innovation LLC's U.S. Patents, dated April 23, 2025 ("Feuerstein Rpt.") |
| B | Johanna Dwyer Reply Expert Report, dated May 19, 2025 ("Dwyer Rpt.") |
| C | Transcript of Deposition of Dr. Martin J. Feuerstein (May 28, 2025) ("Feuerstein Dep.") |
| D | U.S. Patent No. 10,009,161 (the "'161 patent") |
| E | Rebuttal Report of Dr. Mark Mahon Regarding U.S. Patent Nos. 10,009,161, 11,540,272, and 11,219,000, dated May 20, 2025 ("Mahon Rpt.") |
| F | About Us, 5G-Tools.com (downloaded May 31, 2025) |
| G | 5G NR Throughput Calculator, 5G-Tools.com (downloaded May 31, 2025) |
| H | Supplemental Exhibit 12 to Feuerstein Rpt. ("Feuerstein Suppl. Ex. 12") |
| I | Supplemental Exhibit 11 to Feuerstein Rpt. ("Feuerstein Suppl. Ex. 11") |
| J | Whois Record for 5g-Tools.com (https://whois.domaintools.com/5g-tools.com) (last visited June 2, 2025) ("Whois 5g-Tools.com") |
| K | Email from Corey Lipshutz (May 28, 2025) |
| L | Transcript (Rough) of May 29, 2025 Deposition of Mr. David Kennedy ("Kenndy Dep.") |
| M | Supplemental Opening Expert Report of Dr. Martin J. Feuerstein, dated May 27, 2025 ("Feuerstein Second Suppl. Rpt.") |
| N | Plaintiff's Responses to Defendants' Second Set of Common Interrogatories to Pegasus Wireless Innovation LLC (Nos. 8–14), dated January 20, 2025 (Pegasus Interrogatory Responses) |
| O | Appendix E to Dr. Feuerstein's Opening Report regarding Infringement Analysis of Nokia Corporation[sic], dated April 23, 2025 ("Feuerstein App'x E") |
| P | Exhibit A-11: U.S. Patent Number 10,009,161 B2—Preliminary Infringement Contentions ("Ex. A-11 (4G)") |
| Q | Exhibit A-12: U.S. Patent Number 10,009,161 B2—Preliminary Infringement Contentions ("Ex. A-12 (5G)") |

███████████████████████████████

| Exhibit No. | Description |
|---|---|
| **R** | Exhibit T-11: U.S. Patent Number 10,009,161 B2—Preliminary Infringement Contentions ("Ex. T-11 (4G)") |
| **S** | Exhibit T-12: U.S. Patent Number 10,009,161 B2—Preliminary Infringement Contentions ("Ex. T-12 (5G)") |
| **T** | Exhibit V-11: U.S. Patent Number 10,009,161 B2—Preliminary Infringement Contentions ("Ex. V-11 (4G)") |
| **U** | Exhibit V-12: U.S. Patent Number 10,009,161 B2—Preliminary Infringement Contentions ("Ex. V-12 (5G)") |

████████████████████████████████████

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| Verizon | Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., and TracFone Wireless, Inc. |
| AT&T | AT&T Corp., AT&T Services Inc., AT&T Mobility LLC, AT&T Mobility II LLC, New Cingular Wireless PCS, LLC, and Cricket Wireless LLC |
| T-Mobile | T-Mobile USA, Inc., Sprint Solutions LLC, and Sprint Spectrum LLC |
| Carriers | Defendants Verizon, AT&T, and T-Mobile |
| Intervenors | Intervenors Ericsson, Inc. and Nokia of America Corp. |
| Pegasus | Plaintiff and Counterclaim Defendant Pegasus Wireless Innovation LLC |
| KT Corp. | Third-Party Defendant KT Corp. |
| '631 patent | U.S. Patent No. 11,627,631 |
| '931 patent | U.S. Patent No. 10,181,931 |
| '932 patent | U.S. Patent No. 10,616,932 |
| '000 patent | U.S. Patent No. 11,219,000 |
| '272 patent | U.S. Patent No. 11,540,272 |
| '644 patent | U.S. Patent No. 9,894,644 |
| '161 patent | U.S. Patent No. 10,009,161 |
| Asserted Patents | '631 patent, '931 patent, '932 patent, '000 patent, '272 patent, '644 patent, and '161 patent |
| NIA | Non-infringing alternative |

**Note: All quoted emphasis is added unless otherwise noted**

vi

██████████████████████████████████████████████

## I.   INTRODUCTION

Pegasus is asserting seven patents that it contends are essential to the 4G and 5G standards and that are subject to a FRAND commitment. Defendants[1] move to strike the opinions of Dr. Martin Feuerstein on multiple grounds, the primary one being that these seven patents, out of the over one hundred thousand that have been declared to the 4G and 5G standards by other industry participants, improve network throughput between around ███████████ per patent. Mr. Kennedy, Pegasus' damages expert, takes this asserted increase in throughput as the starting assumption for a "densification" network model to claim damages of over ████████.

First, Dr. Feuerstein has vastly exaggerated the throughput increases by comparing the patents-in-suit to inferior, straw-man non-infringing alternatives. He then presents a "benefits analysis" for each patent which outputs a number, as a percentage increase in base station throughput, that Pegasus's damages expert Mr. Kennedy uses as an input to his cost savings analysis. Had Dr. Feuerstein compared the patents-in-suit to the *next best* non-infringing alternative, as required by the Federal Circuit and this Court, the technical benefits would be marginal and the damages would be a fraction of those being claimed by Pegasus.

Second, Dr. Feuerstein issued a Second Supplemental Report the day before the close of expert discovery and at 2:00 AM the day of his deposition. In this report, Dr. Feuerstein pivoted to an entirely new benefits theory after realizing that his original theory was objectively wrong because it was based on a mathematical error. This pivot is too late and too prejudicial.

Third, the facts underlying Dr. Feuerstein's benefits analysis were not disclosed in response to Defendants' interrogatories. For each Asserted Patent, Defendants asked Pegasus to "identify

---

[1] For ease of reading and brevity, "Defendants" is used to refer to Defendants AT&T, T-Mobile, and Verizon, plus Intervenors Ericsson and Nokia, instead of "Carriers and Intervenors."

1

all savings or benefits . . . and provide all facts and law that support your contention." Pegasus did not identify any, but in his expert report, Dr. Feuerstein performs a throughput analysis of the claimed inventions based on undisclosed next-best alternatives.

Fourth, Dr. Feuerstein includes an analysis of products that were not in Pegasus's infringement contentions and which are subject to a pending motion to supplement the infringement contentions. If that motion is denied, Dr. Feuerstein should not be permitted to present opinions on them at trial.

Fifth, Dr. Feuerstein provides irrelevant and prejudicial opinions about industry-wide revenue numbers that will skew the damages horizon and which must be excluded.

Finally, Dr. Feuerstein presented a new infringement theory for the first time in his expert report for the '161 patent that was not included in Pegasus's infringement contentions.

## II.    LEGAL STANDARDS

### A.    *Daubert* as to Use of Inferior Non-Infringing Alternatives

A proponent of expert testimony under Federal Rule of Evidence 702 bears the burden of "demonstrat[ing] to the court that it is more likely than not that: . . . the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702(b)–(d). Where the expert fails to meet this burden, that testimony is unreliable and the court must act as a gatekeeper and exclude any testimony found to be unreliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). In addition, the 2023 amendments to Rule 702 require the proponent of expert testimony to show not only that expert has followed reliable principles and methods, but also to show that "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702(d). In other words, whether an expert has applied the methodology reliably is not a fact issue for the

2

jury, but a gatekeeping question of admissibility for the Court. *Id.*; *see also EcoFactor, Inc. v. Google LLC*, No. 2023-1101, 2025 WL 1453149, at *4 (Fed. Cir. May 21, 2025) (*en banc*).

In determining the incremental value of the patents-in-suit, the Court should compare them to the *next-best* available non-infringing alternative. *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) ("[O]nly by comparing the patented invention to its next best available alternative(s) . . . can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward . . . ."); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Salazar v. HTC Corp.*, No. 2:16-CV-01096-JRG-RSP, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018) (in determining royalty damages, "courts consider the next-best available alternative").

### B.    Untimely Expert Reports

Courts will generally strike a "new and untimely supplemental expert report expressing new opinions." *Sci. Applications Int'l Corp. v. United States*, 169 Fed. Cl. 643, 660 (2024). The rationale is that even when a party's new expert opinions "technically fell within the deadline for [] discovery," that "does not excuse it from not supplementing its response earlier or explaining why it could not do so." *Headwater Rsch. LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-00103-JRG-RSP, 2025 WL 1071353, at *5 (E.D. Tex. Apr. 9, 2025).

### C.    Rule 26 Violations and Excluding Evidence

A party "who has responded to an interrogatory" must "supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

3

In *Semcon IP, Inc. v. Mediatek Inc.*, this Court struck portions of an expert report related to secondary considerations for failure to provide a factual basis in its interrogatory response. No. 2:16-cv-00437-JRG-RSP, 2018 WL 4501871, at *4–5 (E.D. Tex. Feb. 28, 2018). Although the "interrogatory was premature because it asked for expert opinion," the plaintiff "was at least obligated to provide the factual basis for any secondary considerations, and include this factual basis in the interrogatory response itself." *Id.* at *4.

"A court considers four factors in determining whether a Rule 26 violation is harmless: (1) the party's explanation, if any, for its failure to disclose the information in a timely manner; (2) the prejudice to the opposing party if the evidence is admitted; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the evidence." *See Longhorn HD LLC v. NetScout Sys.*, No. 2:20-cv-00349, 2022 WL 991696, *2 (E.D. Tex. Mar. 31, 2022).

### D.    Overall Market Revenue Opinions

Referencing total revenues, without having satisfied the entire market value rule, improperly skews the damages horizon for the jury. *Finesse Wireless, LLC v. AT&T Mobility, LLC*, No. 2:21-cv-00316-JRG-RSP, 2022 WL 17875791, at *8–9 (E.D. Tex. Dec. 21, 2022) (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)). "[T]he entire market value rule is appropriate only when the patented feature is the *sole driver* of customer demand or substantially creates the value of the component parts." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018).

## III.    DR. FEUERSTEIN'S BENEFITS ANALYSIS IS UNRELIABLE

### A.    Dr. Feuerstein Fails To Apply The "Next Best" Non-Infringing Alternatives, And Instead Uses Inferior Alternatives To Upwardly Skew His Throughput Estimations

To analyze the purported technical benefits of each Asserted Patent, Dr. Feuerstein purports to determine the loss of throughput that would be caused in the event the Carriers had to

4

remove the purportedly infringing functionality from their products in favor of a non-infringing alternative ("NIA"). Ex. A (Feuerstein Rpt.) at ¶¶ 1510–1612. After selecting his "next-best" NIA, Dr. Feuerstein attempts to quantify the throughput loss for that NIA.

But, Dr. Feuerstein failed to apply the next-best NIA as required by the Federal Circuit and this Court's caselaw. *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999); *Salazar v. HTC Corp.*, 2018 WL 2033709, at *3. Instead, he applied inferior, or in some cases, no NIAs whatsoever. This skewed upward the claimed benefits of the patents-in-suit. Dr. Feuerstein's tactic is no different than opining that the benefit of an improvement patent covering the intermittent feature on windshield wipers is that it allows the car to drive in the rain, so infringement damages should be measured on that basis. To the contrary, the driver would still drive but just manually turn the wipers on and off (*i.e.*, the next-best NIA).

For two of the patents—the '161 and '272 patents—Dr. Feuerstein "calculates" a throughput loss associated with removing the claimed technology from the accused base stations. Ex. A (Feuerstein Rpt.) at ¶¶ 1561–75, 1587–1612. For another three patents—the '000, '644, and '931 patents—Dr. Feuerstein performs some calculations but ultimately just estimates benefit as a percentage of the '161 patent's benefit. Ex. A (Feuerstein Rpt.) at ¶¶ 1533–40, 1552–60, 1576–86. And for the remaining two patents, Dr. Feuerstein merely estimates the throughput loss as a percentage relative to the '161 patent. Ex. A (Feuerstein Rpt.) at ¶¶ 1510–32, 1541–51. Thus, the methodological flaws in the '161 patent ripple through to five other patents.

### 1.    The '161 Patent

The asserted claims of the '161 patent are extraordinarily narrow. They pertain to the use of specific code rates by base stations when using a modulation scheme called 256 QAM. The claims require CQI tables with code rates of 711, 797, and 948 when using 256 QAM, but the '161 patent's only allegedly novel feature is the use of a specific code rate—797—when using a CQI

5

███████████████████████████████████████████████

table with 256 QAM. Ex. A (Feuerstein Rpt.) at ¶ 1603. To perform his benefits analysis, Dr. Feuerstein assumed that the next best alternative to using code rate 797 would be ████████ ████████████████████████████████████████████████████████████. *Id.* Dr. Feuerstein's analysis, however, ignores that there were several alternative code rates proposed to the 5G standard to be used instead of the 797 code rate. Ex. B ("Dwyer Rpt.) at ¶¶ 429–36; Ex. C (Feuerstein Dep.) at 135:8–13, 136:19–24. For example, a KT contribution to 3GPP indicates that there were at least 10 other code rates proposed, including 799 and 800. Ex. B ("Dwyer Rpt.) at ¶¶ 431–32 (citing R1-142490); Ex. C (Feuerstein Dep.) at 124:18–127:16. The '161 patent even discloses that other possible code rates were possible, explaining that a code rate of 800 could be used. Ex. D ('161 patent) at 14:39–42, FIG. 20; Ex. C (Feuerstein Dep.) at 76:3–77:22. Thus, the next best alternative would have been to model the alleged benefits of using one of the proposed code rates ██████████████████████████████████

████████████████████████████████████████

Despite this, Dr. Feuerstein never compared the asserted claims to these NIAs that are the next-best alternatives. Instead, ████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████ This incorrect and unreliable assumption drastically skews upward the benefits of the '161 patent. Ms. Dwyer's simulations using multiple-alternatives—████████████████████████████████████

██████████████—demonstrates that Dr. Feuerstein's analysis assumes a straw-man next-best alternative. Ex. B ("Dwyer Rpt.) at ¶¶ 429–52; Ex. E (Mahon Rpt.) at ¶¶ 1281–97. For example, Ms. Dwyer simulated use of a 799 code rate, which was proposed by Nokia during standardization, and an 800 code rate, which was proposed by Broadcom during standardization and discussed in

the '161 Patent. Ex. B ("Dwyer Rpt.) at ¶¶ 429–52; Ex. E (Mahon Rpt.) at ¶¶ 1281–97.

Then, instead of calculating the throughput benefit himself, Dr. Feuerstein relies exclusively on a free calculator he found on a Russian-based website, www.5g-tools.com. Ex. A (Feuerstein Rpt.) at ¶ 1603–04; Ex. F (5G-Tools About Us); Ex. J (Whois 5g-Tools.com). There is no indication this is a reliable calculator, as Dr. Feuerstein does not know how the algorithm on that site was constructed and he does not vouch for its accuracy. Moreover, the comments to the "Throughput Calculator" used by Dr. Feuerstein indicate numerous unresolved errors found by users. Ex. G (5G NR Throughput Calculator Webpage). And although the "Throughput Calculator" has an image of an equation, the sheer number of available input variables demonstrates that the equation is *not* what is being used to generate the outputs. Dr. Feuerstein did not independently calculate the results and provided no reason why he believes this website can be trusted, nor did he provide the complete list of inputs he used, rendering them untestable. Dr. Feuerstein's reliance on this algorithm to generate the benefits calculation for the '161 patent is unreliable and should be rejected.

Dr. Feuerstein's two independent errors—using an alternative code rate that is objectively not the next-best NIA and using an unreliable "Throughput Calculator"—both necessitate exclusion of his testimony as to the benefits of the '161 Patent.

### 2.    The '000, '931, and '644 Patents

For the '000 patent, he "calculated" a throughput benefit of ▮▮▮ associated with the '000 patent that he alleges relates to "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As a preliminary matter, the comparison of a resource versus resource sets is a strawman as the examiner recognized that use of resource sets was known in the art. *See* Ex. E (Mahon Rpt.) at ¶¶ 1651–73 (summarizing prosecution history). The patent only issued when the applicant narrowed the claims to require

7

████████████████████████████████████████████████

configuration of the resource sets using UE-specific RRC signaling. Ex. E (Mahon Rpt.) at ¶¶ 1668–73. Dr. Feuerstein did not attempt to value the use of UE-specific RRC signaling as opposed to other types of signaling, and thus his comparison bears no relation to the next best NIA. Ex. A (Feuerstein Rpt.) at ¶ 1559. In addition, Dr. Feuerstein's only explanation of his throughput calculation was a ███████████████████████████████████████████ ████████████████████████████████████████████ Rather than provide this numerical calculation to Mr. Kennedy, however, Dr. Feuerstein sets this calculation aside and simply declares that ██████████████████████████████████████████████████." *Id.* Thus, his benefits analysis ultimately results in a number that was fed to Mr. Kennedy with no connection to the next-best alternative.

Similarly, for the '644 patent, he "█████████████████████████████████ █████████████████████████████████████████████████████ █████████████████████████████████████. No explanation was provided for how he arrived at ████████████████████████████████. And for the '931 patent, █████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████ No explanation was provided for how he went from █████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████ Again, the benefit numbers fed to Mr. Kennedy had no connection to the next-best alternatives and should be excluded.

### 3.    The '631 and '932 Patents

For the '631, and '932 patents, Dr. Feuerstein does not do an independent analysis comparing them to NIAs. Instead, he merely states, as conclusory *ipse dixit*, that these patents are

████████████████████████████████████████████████████

entitled to a percentage of the benefits of the '161 Patent. Ex. A (Feuerstein Rpt.) at ¶ 1531 ("████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.");

*id.* at ¶ 1549 ("████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████")

This is problematic and unreliable for multiple reasons. *First*, to the extent that the Court strikes the unreliable testimony as to the '161 Patent, there is no foundational predicate remaining for these two remaining patents as they are wholly derived from the '161 patent. *Second*, Dr. Feuerstein does nothing to show his analysis as to how he quantified percentages that lead to ████████████████████████ in alleged damages. *Third*, these patents are in different areas of technology than the '161 patent. For example, Dr. Feuerstein alleges that the benefit of the '932 patent relates to ████████████████████████████████ whereas the '161 patent alleges to ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Then, Dr. Feuerstein merely provides a gut-level opinion without any real analysis. It would be like opining that a windshield wiper in a car is worth about 10% of a transmission. *Fourth*, there is not a single document or other piece of evidence cited in the entirety of Dr. Feuerstein's benefits analysis. *See* Ex. A (Feuerstein Rpt.) at ¶¶ 1512–1551.

In *Daubert*, the Court emphasized that "a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be

9

███████████████████████████████████████████████████

whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593. Dr. Feuerstein's methodology for these patents is untestable, as it relies on nothing more than his own assertions of the relative value of patents. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). This Court has previously struck expert testimony that, like Dr. Feuerstein's, is "not the product of reliable and articulated principles and methods as much as they are his own subjective evaluation." *BMC Software, Inc. v. Servicenow, Inc.*, No. 2:14-CV-903-JRG, 2016 WL 379620, at *2 (E.D. Tex. Feb. 1, 2016). Dr. Feuerstein's opinions "are not based on reliable principles and methods that can be accurately reproduced, examined, and challenged. Fundamentally, [Dr. Feuerstein's] opinions are nothing more than *ipse dixit* statements." *Id.*

### 4. The '272 Patent

For the '272 patent, Dr. Feuerstein calculated a reduction in throughput of ███████████

███████████████████████████████████████████. *There is no dispute that his math is wrong*; ██████████████████████████████████████████████

████████████ and attempted to supplement (without leave) his opinions at 2:00 AM the morning of his deposition to provide an entirely new analysis. Ex. C (Feuerstein Dep.) at 181:13–15; Ex. K (Email from C. Lipschutz). That error, when passed to Mr. Kennedy, resulted in more than a ████ ████ damages overcalculation. Ex. L (Kennedy Dep.) at 69:24–70:6.

## IV. DR. FEUERSTEIN'S SECOND SUPPLEMENTAL REPORT IS UNTIMELY

On May 28, 2025, *the day before the close of expert discovery and at 2:00 AM on the day Dr. Feuerstein was deposed*, Pegasus served a "[Second] Supplemental Feuerstein Report" ("Second Supplement"). *See* Ex. K (Email from C. Lipschutz). As described above, this supplement was prompted by ████████████████████████████

10

██████████████████████████████████████████████████

██████████████████████████████████████ This Second Supplement does not just attempt to fix these errors. Instead, it is an entirely new analysis employing a different methodology.

For example, in Dr. Feuerstein's initial benefits analysis, he calculated the percentage throughput change based ████████████████████████████████████████ and then calculated what the savings would be based on a simple percentage of the overall throughput. Ex. A (Feuerstein Rpt.) at ¶¶ 1566–67, 1575. In contrast, his new report is a completely new framework that ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████. In other words, this Second Supplement was a complete pivot in Dr. Feuerstein's methodology due to the realization that his opening report contained a blunder.

The Court should not allow Pegasus to introduce a new theory the day before the close of expert discovery. Although the Second Supplement "technically fell within the deadline for [] discovery," that "does not excuse it from not supplementing its response earlier or explaining why it could not do so." *Headwater Rsch.*, 2025 WL 1071353, at *5. The only reason that Pegasus can offer as to why Dr. Feuerstein could not provide this opinion earlier is because he believed his prior opinion was correct. This might have provided a reason for him to fix his math, but it is not a basis for a pivot to an ***entirely new theory*** the day before the close of expert discovery. The first *Longhorn* factor weighs heavily in favor of exclusion.

Allowing Dr. Feuerstein an opportunity to introduce an entirely new benefit theory after Defendants' expert rebutted his prior theories and at the close of expert discovery is highly prejudicial to Defendants. The benefit that Dr. Feuerstein calculated for the '272 patent in his Second Supplement is the single most important variable to Mr. Kennedy's damages model and

11

yields over ▮▮▮▮▮▮ in top line damages claimed for the '272 patent alone. There is a direct, linear relationship between his benefits calculation and Mr. Kennedy's damages opinions. Allowing Dr. Feuerstein's "do over" attempt is highly prejudicial to Defendants, and the second *Longhorn* factor weighs heavily in favor of exclusion.

Although the possibility of a continuance may allow Defendants' experts an opportunity to evaluate and respond to Dr. Feuerstein's new theory, it will not cure the prejudice. Defendants received Dr. Feuerstein's opening report, made strategic decisions regarding how to rebut those opinions, ran simulations to rebut those previously undisclosed theories, and worked with multiple experts to develop responsive positions. Those responsive opinions were then disclosed, and it is now impossible to "put the cat back in the bag." Thus, the third *Longhorn* factor weighs in favor of exclusion. Finally, although Pegasus will likely claim that the evidence is "important," it is only arguably important because of the way Pegasus elected to set up its damages case. This is not key factual evidence of prior art or infringement but is instead a new theory. Any importance is because Pegasus elected to go this route, not because of the innate nature of the evidence. The fourth *Longhorn* factor weighs against giving Dr. Feuerstein a "do over." [2]

Choices have consequences. Dr. Feuerstein chose to calculate his benefits for the '272 patent one way. He made a mistake that rendered his opinion objectively wrong. But making a math error is not a license to present an entirely new theory at the end of expert discovery. The consequence should be that Dr. Feuerstein's Second Supplement is stricken.

## V.    THEORIES BASED ON WITHHELD FACTS SHOULD BE STRICKEN

Defendants' Interrogatory No. 14 sought:

---

[2] If Dr. Feuerstein's Second Supplemental Report is not stricken, Defendants should be afforded an opportunity to serve responsive expert reports and to depose Dr. Feuerstein on his new opinions.

12

████████████████████████████████████████████

> For each of the Asserted Claims, on a claim-by-claim basis, identify all savings or benefits that are attributable to the purported invention, and provide all facts and law that support your contention, including an identification of whether the savings and/or benefits inure to handsets, base stations, or other equipment and a quantification of such savings and/or benefits.

Ex. N (Pegasus Interrogatory Responses). The entirety of Pegasus's substantive response was: "Pegasus refers to the expert reports it will disclose in accordance with the Court's Scheduling Order. Pegasus also incorporates by reference its identification of claim terms and infringement contentions pursuant to Local Patent Rule 3-1, including as they may be amended or supplemented from time to time, and the documents cited therein. Pegasus also refers to the specifications of the Asserted Patents." Ex. N. Pegasus did not identify any benefits, and none of the Asserted Patents mention "throughput." Eventually, however, Pegasus submitted Dr. Feuerstein's opening and Second Supplemental reports, totaling nearly thirty pages of opinions on purported throughput benefits based on various factual assertions. Paragraphs 1510–1612 of Dr. Feuerstein's opening report—along with the entirety of his Second Supplemental report—should be stricken because Pegasus failed to disclose the factual bases for these opinions in response to Interrogatory No. 14.

Although the Federal Rules contemplate that contention interrogatories need not be answered **early**, it does not mean that they do not have to be answered **at all**. Pegasus "was at least obligated to provide the factual basis" for its benefits analysis "and include this factual basis in the interrogatory response itself." *Semcon*, 2018 WL 4501871, at *4–5. Instead, Pegasus provided **no factual information** in response to Interrogatory No. 14.[3] In particular, the alleged alternatives that Dr. Feuerstein used in his analysis were not disclosed. The factual underpinnings of Dr. Feuerstein's entire benefits analysis was withheld during fact discovery.

---

[3] Defendants did not have any reason to believe that Pegasus was going to present a "cost savings" damages model predicated on benefits, thus Defendants had no basis to move to compel a response to Interrogatory No. 14 as it was possible that Pegasus was not contending that any existed.

13

███████████████████████████████████████████

The *Longhorn* factors heavily favor exclusion. First, there is no reason why Pegasus could not have disclosed this information during fact discovery. Second, allowing Pegasus to present factual arguments for the first time in expert discovery is highly prejudicial to Defendants, as the entirety of Pegasus's damages model is predicated on this theory. Third, a continuance would not cure the prejudice without reopening discovery to allow Defendants to explore facts relevant to Dr. Feuerstein's opinions. Finally, this factual evidence is only "important" because Pegasus elected to present a "cost savings" damages theory; Pegasus should not be excused from its failure to abide by the rules of discovery because it elected to make the withheld facts relevant. All four *Longhorn* factors weigh in favor of excluding these new opinions.

## VI.    PREVIOUSLY UNACCUSED PRODUCTS SHOULD BE STRICKEN

Pegasus's Motion for Leave to Amend Infringement Contentions (Dkt. No. 305) is pending. "Expert infringements reports may not introduce theories not previously set forth in infringement contentions." *Mobility Workx, LLC v. Cellco P'ship*, No. 4:17-CV-00872, 2019 WL 5721814, at *13 (E.D. Tex. Nov. 5, 2019). If the Court denies this Motion, then the products found in Appendices A, B, and C to Dr. Feuerstein's report that are not in the operative infringement contentions should be excluded.

## VII.    OPINIONS ON OVERALL INDUSTRY REVENUES SHOULD BE STRICKEN

Dr. Feuerstein is Pegasus's technical expert on infringement for all patents and on invalidity for two patents. He does not offer opinions on economic issues or damages, nor is he qualified to do so. Nonetheless, his expert report contains numerous instances where he presents staggeringly large industry-wide revenue numbers that will inevitably skew the damages horizon for the jury. ████████████████████

████████████████████████████████████████████

████████████████████████████ These statements should be stricken because Dr.

14

Feuerstein is not a damages expert and he made no attempt to satisfy the entire market value rule. "Without having satisfied the entire market value rule," Dr. Feuerstein "cannot offer opinions referencing Defendants' total revenues" in this manner "because doing so skews the damages horizon for the jury." *See Finesse Wireless*, 2022 WL 17875791, at *9; *Uniloc*, 632 F.3d at 1320. Because no aspect of Dr. Feuerstein's analysis relies on this information, there is no prejudice (or even any impact) to Pegasus if these statements are stricken. As such, they should be stricken and Dr. Feuerstein should not be permitted to address overall industry revenues before the jury.

## VIII.    THE NEW '161 PATENT INFRINGEMENT THEORY SHOULD BE STRICKEN

In his opening report, Dr. Feuerstein advanced a new '161 patent infringement theory that was not disclosed in infringement contentions. Specifically, Dr. Feuerstein relied on



But Pegasus's infringement contentions (served March 19, 2024) neither alleged nor cited any evidence to support, any '161 patent infringement theory based on

Instead, Pegasus cited evidence related to

Pegasus's infringement contentions failed to provide notice of an infringement theory based on ▮▮▮▮▮▮▮▮, and Dr. Feuerstein "may not introduce theories not previously disclosed in infringement contentions." *Solas OLED Ltd. v. Samsung Elecs. Co.*, 2:21-cv-105-JRG-RSP, 2022 WL 1912864, at *1 (E.D. Tex. May 30, 2022). Dr. Feuerstein's opinions relating to ▮▮▮▮▮▮ should thus be stricken.

███████████████████████████████████

DATED: June 3, 2025

Respectfully submitted,

Alston & Bird LLP

BY: */s/ Ross R. Barton*
Ross Barton (NC Bar No. 37179)
J. Ravindra Fernando (NC Bar No. 49199)
Matt Turk (NC Bar No. 57361)
Erin Beaton (NC Bar No. 59594)
ross.barton@alston.com
ravi.fernando@alston.com
matthew.turk@alston.com
erin.beaton@alston.com
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street
Suite 300
Charlotte, NC 28203-6818
Phone: (704) 444-1000
Fax: (704) 444-1111

John D. Haynes (GA Bar No. 340599)
David S. Frist (GA Bar No. 205611)
Bryan W. Lutz (GA Bar No. 915395)
Siraj Abhyankar (GA Bar No. 484680)
James Atkison (GA Bar No. 310451)
Carter Babaz (GA Bar No. 577033)
john.haynes@alston.com
david.frist@alston.com
shri.abhyankar@alston.com
james.atkison@alston.com
carter.babaz@alston.com
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

Theodore Stevenson (TX Bar No. 19196650)
Michael J Newton (TX Bar No. 24003844)
Elliott Riches (TX Bar No. 24125381)
Jason Spotts (TX Bar No. 24125945)
ted.stevenson@alston.com
elliott.riches@alston.com
jason.spotts@alston.com
**ALSTON & BIRD LLP**

16

████████████████████████████████

Chase Tower
2200 Ross Avenue
Suite 2300
Dallas, TX 75201
Phone: (214) 922-3400
Fax: (214) 922-3899

*Counsel for Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., TracFone Wireless, Inc., AT&T Corp., AT&T Services, Inc., AT&T Mobility LLC, AT&T Mobility II LLC, New Cingular Wireless PCS, LLC, Cricket Wireless LLC, T-Mobile USA, Inc., Sprint Solutions LLC, and Sprint Spectrum LLC; and Intervenors Ericsson Inc. and Nokia of America Corp.*

Deron R. Dacus (TX Bar No. 00790553)
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

*Counsel for Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., TracFone Wireless, Inc., AT&T Corp., AT&T Services, Inc., AT&T Mobility LLC, AT&T Mobility II LLC, New Cingular Wireless PCS, LLC, Cricket Wireless LLC, T-Mobile USA, Inc., Sprint Solutions LLC, and Sprint Spectrum LLC; and Intervenors Ericsson Inc. and Nokia of America Corp.*

Melissa R. Smith
Harry Lee Gillam, Jr.
State Bar No. 24001351
**Gillam & Smith, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com
gil@gillamsmithlaw.com

17

███████████████████████████████████

*Counsel for Defendants T-Mobile USA, Inc., Sprint Solutions LLC, and Sprint Spectrum LLC*

Thomas William Ritchie (IL Bar 6301954)
**JONES DAY**
110 North Wacker Drive
Suit 4800
Chicago, IL 60601-1692
Tel: (312) 782-3939
Fax: (312) 782-8585
twritchie@jonesday.com

*Counsel for Defendants Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., and TracFone Wireless, Inc., T-Mobile USA, Inc., Sprint Solutions LLC, and Sprint Spectrum LLC*

Michael C. Hendershot (CA Bar 211830)
Evan Matthew McLean (CA Bar 280660)
**JONES DAY**
1755 Embarcadero Road
Palo Alto, California 94303
Tel: (650) 739-3939
Fax: (650) 739-3900
mhendershot@jonesday.com

Edwin Garcia (TX Bar 24097726)
**JONES DAY**
51 Louisiana Ave, N.W.
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
edwin.garcia@jonesday.com

Stephanie M Mishaga (CA Bar 326058)
**JONES DAY**
4655 Executive Drive
Suite 1500
San Diego, CA 92121
Tel: (858) 314-1200
Fax: (844) 345-3178
stephanie.mishaga@jonesday.com

Tracy Ann Stitt (OH Bar 0079949)

18

**JONES DAY**
901 Lakeside Ave
Cleveland, OH 44114
Tel: (216) 586-3939
Fax: (216) 579-0212
tastitt@jonesday.com

*Attorney for Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., and TracFone Wireless, Inc.*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing upon Counsel of Record. I further certify that I am sending a copy of this sealed filing to all counsel of record via email.

/s/ Ross R. Barton
Ross R. Barton

*Counsel for Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., TracFone Wireless, Inc., AT&T Corp., AT&T Services, Inc., AT&T Mobility LLC, AT&T Mobility II LLC, New Cingular Wireless PCS, LLC, Cricket Wireless LLC, T-Mobile USA, Inc., Sprint Solutions LLC, and Sprint Spectrum LLC; and Intervenors Ericsson Inc. and Nokia of America Corp.*

**CERTIFICATE OF CONFERENCE**

I hereby certify that on May 29, 2025, counsel for Defendants and Intervenors conferred with counsel for Pegasus via teleconference. Counsel for Pegasus indicated that it opposes the relief requested herein.

/s/ Ross R. Barton
Ross R. Barton

*Counsel for Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., TracFone Wireless, Inc., AT&T Corp., AT&T Services, Inc., AT&T Mobility LLC, AT&T Mobility II LLC, New Cingular Wireless PCS, LLC, Cricket Wireless LLC, T-Mobile USA, Inc., Sprint Solutions LLC, and Sprint Spectrum LLC; and Intervenors Ericsson Inc. and Nokia of America Corp.*

20

21